**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
Michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEFANIA DAIDONE MANIACI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NOW HEALTH GROUP, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff, Stefania Daidone Maniaci ("Plaintiff" or "Maniaci"), a resident of New York, individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Defendant, NOW Health Group, Inc. ("NOW" or "Defendant"), and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by counsel.

### I.   <u>NATURE OF THE ACTION</u>

1. This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes who purchased NOW's dietary supplement, St. John's Wort Extract (the "Product").

2. "One of the fastest growing industries in the world is the nutritional supplement group, or more broadly known as Vitamins, Minerals and Supplements, or VMS. Producing about

$32 billion in revenue for just nutritional supplements alone in 2012, it is projected to double that by topping $60 billion in 2021 according to the Nutritional Business Journal."[1]

3. In order to reap substantial profits from the sales of nutritional supplements, many companies, including NOW, look to cut corners to keep manufacturing costs low for their products.

4. NOW formulated, manufactured, warranted, advertised and sold the Product throughout the United States, including in the State of New York and in this District.

5. Unbeknownst to Plaintiff and the members of the Classes, who relied upon NOW's Product labeling, the dietary supplement Product sold by NOW did not contain consistent amounts of the sole active ingredient standardized extract, hypericin, listed on its label.

6. Despite having knowledge that the Product's labeling is deceptive, misleading, and constitutes a fraud on consumers, NOW continues to advertise, distribute, label, manufacture, market, and sell the Product in a false, misleading, unfair, and/or deceptive manner.

7. As a result of NOW's unlawful and deceptive conduct, Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## II.     PARTIES

8. During the Class period, Class members in New York and throughout the United States purchased the Product through numerous brick and mortar and online retail stores. Plaintiff and Class members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Class Action Complaint.

9. Plaintiff is a resident of Nassau County, New York. She purchased the Defendant's Product for her own use in New York during the three years preceding the filing of this Complaint, most recently at a retail store located in Long Beach, New York, for approximately $13.99.

---

[1] *Nutritional Supplements Flexing Muscles As Growth Industry*, FORBES, http://www.forbes.com/sites/davidlariviere/2013/04/18/nutritional-supplements-flexing-their-muscles-as-growth-industry/ (last visited on May 15, 2017).

10.     NOW Health Group, Inc., is headquartered at 244 Knollwood Drive, Suite 300, Bloomingdale, Illinois. NOW produces and sells natural products, nutritional supplements, facial care/body care/hair care/hygiene products, tropical oils and seasonal products, women's health products, essential oils, sports nutrition products and beauty supplements.

### III.  JURISDICTION AND VENUE

11.     This Court has original jurisdiction over the claims asserted herein individually and on behalf of the Class pursuant to 28 U.S.C. §1332, as amended in 2005 by the Class Action Fairness Act Subject matter jurisdiction is proper because:

> (1) the amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs; and
>
> (2) a substantial number of the members of the proposed class are citizens of a state different from that of Defendant.

12.     Diversity jurisdiction exists because Plaintiff is a citizen of New York and NOW is a citizen of Illinois.

13.     This Court has personal jurisdiction over NOW because it conducts business in New York. NOW has marketed, distributed, and sold the Product in New York. NOW has sufficient minimum contacts with this State, and/or sufficiently avails itself to the markets of this State through its sales and marketing within this State to render the exercise of jurisdiction by this Court permissible.

14.     This Court has personal jurisdiction over NOW because it has continuous and systematic contacts with New York and regularly sells its products to New York residents. NOW conducts business throughout the United States, including in the State of New York and in this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a) because NOW transacts substantial business in this District.

## IV.   SUBSTANTIVE ALLEGATIONS

16.   NOW labels and markets its St. John's Wort Product in such a deceptive and misleading manner that Plaintiff and Class members were deceived into purchasing a Product that failed to provide consistent amounts of the active ingredient standardized extract, hypericin.

17.   Health experts have long complained about the quality and safety of herbal supplements, which are exempt from the strict regulatory oversight applied to prescription and over-the-counter drugs. Putting aside questions as to the efficacy of these supplements, there have been longstanding questions as to whether they even contain the ingredients listed on their labels.

18.   Although there is some regulatory framework under the Food, Drug and Cosmetic Act (the "FDCA") for herbal extracts, neither the FDCA nor the United States Food and Drug Administration have provided a legal or regulatory definition for "standardized" extracts. Indeed, the National Institutes of Health, Office of Dietary Supplements, has confirmed that "no legal or regulatory definition exists for standardization in the United States as it applies to botanical dietary supplements."[2]

19.   Despite this lack of oversight by any governmental authority, the purpose of standardizing an extract is well known, as stated by the Defendant itself:

> A standardized herbal extract is an herb extract that has one or more components present in a specific, guaranteed amount, usually expressed as a percentage. The intention behind the standardization of herbs is to guarantee that the consumer is getting a product in which the chemistry is consistent from batch to batch.[3]

20.   Although there is no legal or regulatory definition, scientific journals have found that "standardized guarantees the content of one or more active constituents and marker compounds."[4]

---

[2] *Botanical Dietary Supplements*, NATIONAL INSTITUTES OF HEALTH, OFFICE OF DIETARY SUPPLEMENTS, http://ods.od.nih.gov/factsheets/BotanicalBackground-HealthProfessional/ (last visited May 15, 2017).

[3] *Whole Herbs vs. Standardized Herbal Extracts: Which is Better?*, NOW FOODS, https://www.nowfoods.com/now/nowledge/whole-herbs-vs-standardized-herbal-extracts-which-better (last visited Feb. 3, 2017).

[4] Garg, V., et al., *Facts about standardization of herbal medicine: a review*. Journal of Chinese Integrative Medicine, October 2012, Vol. 10, No. 10, 1077.

21. When Plaintiff and Class members were shopping for a St. John's Wort product in the standardized form, they expected to receive the "guaranteed" amount listed on the label based upon the general understanding of "standardized." Unfortunately, this is not what has happened.

22. Specifically, the front label of NOW's St. John's Wort Product predominantly features "300 mg, 0.3% hypericin." *See*, **Exhibit A**, annexed hereto.

23. On the back label of the Product under the Supplement Facts section, NOW claims that the Product has been standardized to a "min. 0.3% Hypericin." *See*, **Exhibit A**, annexed hereto.

24. After the consumer watchdog group ConsumerLab.com reported that NOW's St. John's Wort Product contained low levels of hypericin,[5] Plaintiff's counsel had the Product tested and found that it contained even less hypericin than reported by ConsumerLab.com. ConsumerLab.com found that the Product contains approximately 45.4% of the label claim. Plaintiff's testing revealed that the Product contains .0181 mg of hypericin, or 20.1% of label claim. *See* ChromaDex NOW St. John's Wort Product Test Results, attached hereto as **Exhibit B**.

25. Based on these test results, NOW's claim that its St. John's Wort Product contains a "min. of 0.3% Hypericin" is false, deceptive and misleading.

26. St. John's Wort is promoted as an anti-depressant herb that is commonly used for its neurological effects.

27. NOW is fully aware that scientific literature has shown benefits with the Product, but at the lowest dosage of 0.3% hypericin (0.9 mg) per day, the exact amount claimed on the Product's label. Also, because NOW is the manufacturer of the Product, it is fully aware that it manufactures the Product to contain less of the standardized extract than claimed on the label. Plaintiff, Class members, and a reasonable consumer would consider and use this information in making the decision regarding whether to purchase NOW's St. John's Wort Product. However, NOW purposely omitted this material fact, to the detriment of Plaintiff and other Class members.

---

[5] *St. John's Wort Supplements Review*, CONSUMERLAB.COM, https://www.consumerlab.com/reviews/St_Johns_Wort/stjohnswort/ (last visited May 15, 2017).

28. Plaintiff and other members of the Classes purchased and consumed the Product because they believed, based upon the misleading label, that it contained the standardized ingredient listed on the label and that the quantity of such ingredient was accurately stated on the Product's label.

29. Plaintiff and the other members of the Classes had a reasonable expectation that when purchasing NOW's "standardized" St. John's Wort Product, they purchased a Product with precise amounts of "standardized" hypericin contained within the Product.

30. Plaintiff and other members of the Classes would not have bought NOW's St. John's Wort "Standardized" Extract Product if they had known that the Product had a significantly lower quantity of the standardized extract hypericin than was stated on the Product label.

31. Plaintiff and Class members were in fact misled by NOW's representations regarding the true nature of the hypericin content and value.

32. The difference between the Product promised and the Product sold is significant. The amount of hypericin provided in NOW's standardized St. John's Wort Standardized Extract dietary supplement has a real impact on the benefits provided to consumers by the Product, and the actual value of the Product itself.

33. NOW's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food—including nutritional supplements—misbranded when the label contains a statement that is "false or misleading in any particular."

34. NOW's deceptive statements likewise violate New York Agric. & Mkts. Law § 199-a and N.Y. Gen. Bus. Law §§ 349 and 350.

35. In fact, the introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

36. Plaintiff and Class members would have purchased other St. John's Wort dietary supplements, if any at all, if they had not been deceived by the misleading and deceptive labeling of the Product by NOW.

## V.     CLASS ALLEGATIONS

37.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

38.     This action is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

39.     Plaintiff seeks certification of the following Classes:

**National Class:** All persons in the United States who purchased the Product.

**Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York and Washington who purchased the Product.[6]

**New York Sub-Class:** All persons in the State of New York who purchased the Product.

Excluded from the Classes are NOW and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

40.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff, but may be ascertained from NOW's

---

[6] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 ILCS 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

42. **Commonality and Predominance -Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members of the Classes include:

a) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

b) Whether NOW's actions violate the State consumer fraud statutes invoked below;

c) Whether NOW breached an express warranty to Plaintiff and members of the Classes; and

d) Whether NOW was unjustly enriched at the expense of the Plaintiff and members of the Classes.

43. NOW engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

44. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by NOW in violation the laws as complained of herein. Further, the damages of each member of the Classes were caused directly by NOW's wrongful conduct in violation of the laws as alleged herein.

45. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because she is a member of the Classes and her interests do not conflict with the interests of the other members of the Classes she seeks to represent. Plaintiff has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of all members of

the Classes. Accordingly, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

46. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** NOW has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

47. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against NOW, so it would be impracticable for members of the Classes to individually seek redress for NOW's wrongful conduct. Even if members of the Classes could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION
### COUNT I
**Violation of State Consumer Fraud Acts**
**(On Behalf of the Consumer Fraud Multi-State Class)**

48. Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

49. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

50. NOW intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

51. As a result of the NOW's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

52. In addition, NOW's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II

### Violation of New York General Business Law § 349: Mislabeling
### (On Behalf of the New York Sub-Class)

53. Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

54. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

55. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Sub-Class Members seek monetary damages against Defendant in an amount to be determined at trial.

56. There is no adequate remedy at law.

57. Further, and pursuant to New York General Business Law § 349, Plaintiff seeks an order of this Court that includes, but is not limited to, enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

58. Plaintiff and the other members of the Class and New York Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

59. NOW's conduct in representing the benefits of its St. John's Wort Product constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of NOW's trade or commerce.

60. NOW intended that Plaintiff and each of the other members of the New York Sub-Class would rely on its representations. Through independent Product testing by ConsumerLab.com and Plaintiff's counsel, the Product has been shown not to contain the claimed amount of hypericin, and NOW intended to profit upon this fact.

61. This misrepresentation is material because it concerns the type of information upon which a reasonable consumer would be expected to rely upon in making a decision whether to purchase the Product.

62. Because NOW is in the business of selling dietary supplement products, NOW committed unfair and deceptive acts in the conduct of its trade and commerce.

63. NOW's practice of misrepresenting the Product is also unfair because it offends public policy and is immoral, unethical, and unscrupulous. New York consumers are being misled about the very efficacy and purpose of the Product. Misrepresenting the Product offends the public's expectation to be told the truth about the products they are buying.

64. Because the Product has no efficacy, the Product sold is worth less than the Product as represented, and Plaintiff and members of the New York Sub-Class paid a premium for the Product. Had the truth been known, Plaintiff and members of the New York Sub-Class would not have purchased the Product.

65. Plaintiff and members of the New York Sub-Class were deceived by the labeling on the Product and suffered economic damages as a proximate result of NOW's unlawful conduct as alleged herein, including the difference between the actual value of the Product and the value of the Product if it had been as represented.

### COUNT III

**Violation of the New York General Business Law § 350**
**(On Behalf of the New York Sub-Class)**

66. Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

67. The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive and fraudulent business acts and practices.

68. New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

69. GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

70. Plaintiff and the members of the New York Sub-Class are consumers who purchased the Product in New York.

71. As sellers of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

72. Defendant's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Defendant's advertising fails to reveal material facts with respect to the Product, as described above, constitute false advertising in violation of the New York General Business Law.

73. Defendant's false advertising was knowing and intentional.

74. Defendant's actions led to direct, foreseeable and proximate injury to Plaintiff and the New York Sub-Class.

75. As a consequence of Defendant's deceptive marketing scheme, Plaintiff and the other members of the New York Sub-Class suffered an ascertainable loss, insofar as they would not have purchased the Product had the truth been known, or would have purchased the Product on different terms, or would otherwise purchase a competing product, and as a result of Defendant's conduct, they received a product of less value than what they paid for.

76. By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the New York Sub-Class for actual damages or five hundred dollars ($500) for each sale of the Products (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

## COUNT IV

### Breach of Express Warranty
### (On Behalf of the National Class)

77. Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

78. Plaintiff, and each member of the National Class, formed a contract with NOW at the time Plaintiff and the other members of the National Class purchased the Product. The terms of the contract included the promises and affirmations of fact made by NOW on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the National Class and NOW.

79. NOW purports through its advertising, labeling, marketing and packaging to create an express warranty that the Product contained a "standardized" amount of hypericin, specifically "min. 0.3% Hypericin."

80. Plaintiff and members of the National Class performed all conditions precedent to NOW's liability under this contract when they purchased the Product.

81. NOW breached express warranties about the Product and its qualities because NOW's statements about the Product were false and the Product does not conform to NOW's affirmations and promises described above.

82. On February 27, 2017, Plaintiff, on behalf of herself and the National Class, provided NOW with sufficient notice of NOW's breach of the express warranties provided on the label of its St. John's Wort dietary supplement Product. In particular, Plaintiff notified NOW that its St. John's Wort Product contains substantially less hypericin than advertised on the Product label.

83. By providing pre-suit notice, Plaintiff has effectively notified NOW of the troublesome nature of her transaction within a reasonable time of discovering the breach.

84. Despite providing the above notice to NOW that its Product does not meet NOW's warranties and in fact fails in many respects to perform consistent with the Product's representations, NOW continues to hide the facts from consumers and fails to correct the material misrepresentations

regarding defects of its Product. Rather, NOW continues to market and sell the Product in a misleading and deceptive manner.

85. Actual and/or constructive notice was duly given to NOW of the breaches of these warranties, and NOW has yet failed to cure.

86. Plaintiff and each of the members of the National Class would not have purchased the Product had they known the true nature and quality of the Product.

87. As a result of NOW's breach of warranty, Plaintiff and each member of the National Class have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

## COUNT V
### Breach of Implied Warranty
### (On Behalf of the National Class)

88. Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

89. Defendant knew and intended that the members of the National Class would be the ultimate consumers of the Product.

90. Defendant sold the Product into the stream of commerce and the Defendant is a merchant with respect to goods such as the Product at issue.

91. The Product was not merchantable at the time of sale, because it did not, nor could not, have any impact related to the representations as alleged herein.

92. Plaintiff and the other members of the National Class did not receive the benefit of their bargain in purchasing the Product.

93. Because of Defendant's breach of the implied warranty, the Plaintiff and the other members of the National Class were injured.

94. As a result of Defendant's breach, Plaintiff and the other members of the National Class have sustained damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on behalf of herself and the other members of the Classes proposed in this Complaint providing such relief as follows:

A. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B. Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C. Ordering Defendant to pay actual damages to Plaintiff and the other members of the Classes;

D. Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

E. Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked above, to Plaintiff and the other members of the Classes;

F. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

G. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H. Ordering such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

DATED: May 17, 2017

**GABRIELLI LEVITT LLP**

Michael J. Gabrielli (MG-2421)
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

*Attorneys for Plaintiff and Proposed Classes*